IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID WAYNE HANDY,                       )
                                         )
                Plaintiff,                )
                                         )
        v.                                )       1:20CV869
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of Social Security,[1] )
                                         )
                Defendant.                )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David Wayne Handy ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on March 22, 2017, alleging a disability onset date of October 15, 2015 in both applications. (Tr. at 16, 281-94.)[2] His applications were denied initially (Tr. at 96-121) and upon reconsideration (Tr. at 122-145). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 185-86.) On June 18, 2019, Plaintiff, along with his attorney, attended the subsequent hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 16.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act prior to October 1, 2018, but became disabled on that date and continued to be disabled through the date of the administrative decision. (Tr. at 26.) On July 20, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).³

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

³ "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 19.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Right hip replacement; esophageal cancer; and obesity[.]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Tr. at 19.) The ALJ found at step three that, prior to October 1, 2018, the date Plaintiff became disabled, none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 19-21.) However, the ALJ further determined that, beginning on October 1, 2018, the severity of Plaintiff's esophageal cancer met 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 13.16 ("Listing 13.16"), rendering him disabled under the Act. (Tr. at 25-26.) The ALJ therefore assessed Plaintiff's RFC for the period from Plaintiff's alleged onset date, October 15, 2015, through September 30, 2018, and determined that during that period, he could perform light work with the following, non-exertional limitations:

> [Plaintiff] could stand and walk for no more than two hours at a time and four hours cumulatively in an eight-hour workday. Additionally, he could occasionally stoop, crouch, crawl, kneel, balance, and climb stairs. Furthermore, he could never climb ladders or have exposure to unprotected heights.

(Tr. at 22.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 23-24.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 24-25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act prior to October 1, 2018. (Tr. at 25, 26.)

Plaintiff agrees that he was entitled to a period of disability beginning on October 1, 2018. However, he contends that the ALJ erred by failing to consider whether Plaintiff was

6

Case 1:20-cv-00869-WO-JEP   Document 18   Filed 01/31/22   Page 6 of 14

also entitled to a second, closed period of disability prior to his hip replacement surgery on February 28, 2017.[5]

In examining a claim for disability benefits, an ALJ must evaluate whether a claimant has shown that he was disabled for any consecutive twelve-month period between his onset date and the date of the hearing. See 42 U.S.C. § 1382c(a)(3)(A) and 42 U.S.C. § 423(d)(1) (A)). This can include a "closed period" of disability for any consecutive twelve-month period during which the claimant is disabled between the onset date and the date of the hearing, and failure to consider whether a closed period of disability exists may warrant remand. See, e.g., Sykes v. Commissioner, Social Security, No. ELH-16-898, 2017 WL 35436 (D. Md. Jan. 4, 2017) (collecting cases.) However, such a finding need not be explicit. See Atwood v. Astrue, No. 5:11CV002-RLV-DSC, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011) ("The ALJ found that Plaintiff was not disabled at any time from his alleged onset date of May 26, 2006, through the date of his decision. . . . Implicit in this finding is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time.").

---

[5] A timeline may be helpful:
| | |
|---|---|
| October 15, 2015 | Alleged Onset Date |
| March 2016 | Consultative Examination – Dr. Jarrell |
| February 2017 | Hip Replacement Surgery |
| March 2017 | Application for Benefits |
| May 2017 | Initial Denial (Opinion by Dr. Linster) |
| July 2017 | Denial on Reconsideration (Opinion by Dr. Reinke) |
| October 2018 | Diagnosis of esophogeal cancer |
| June 2019 | ALJ Hearing |

As discussed above, the ALJ determined that Plaintiff was disabled as of October 1, 2018 based on his esophogeal cancer, and Plaintiff does not contest that determination. The ALJ found that Plaintiff was not disabled from the alleged onset date of October 15, 2015 through September 30, 2018. In this appeal, Plaintiff does not contest that determination for the period after his hip replacement surgery in February 2017 through September 2018, presumably because the medical records reflect that the surgery was largely successful. Instead, Plaintiff contests the ALJ's determination for the period from October 15, 2015 until his surgery in February 2017.

7

In the present case, Plaintiff argues that the medical evidence "indisputably establishes that his right hip osteoarthritis and resulting pain were significantly more severe and limiting before [his February 2017] surgery," but that the ALJ's decision "does not reflect the severity and limiting effects of right hip osteoarthritis prior to the surgery." (Pl.'s Br. [Doc. #13] at 8.) Plaintiff further contends that "[t]his failure by the ALJ is a reversible error because with a more restrictive RFC, [Plaintiff] may have been disabled during the period between his October 2015 . . . alleged onset date and his February 2017 right hip replacement surgery." (Pl.'s Br. at 9.)

In support of these contentions, Plaintiff cites treatment records from December 2016 and January 2017, in which he "reported to his orthopedic treating specialists that he had suffered from severe right hip pain since 2014." (Pl.'s Br. at 4 (citing Tr. at 497, 499).) In fact, the records cited by Plaintiff indicate that, as of January 2017, he had "experienced right hip pain for 3 years with acute on chronic worsening over the last 3 months." (Tr. at 499); (see also Tr. at 500) (noting that Plaintiff has "a three-year history of right hip pain which has worsened significantly over the last 3 months."). Plaintiff further reported that his symptoms were "made worse with prolonged weightbearing and ambulation" and had "progressed to the point of affecting all activities of daily living." (Tr. at 499.) X-rays from December 2016 reflected "moderate osteoarthritis of the right hip" (Tr. at 535-36), and Plaintiff's January 2017 examination revealed "[d]iminished internal rotation" and "[s]ignificant discomfort with hip flexion, adduction[,] and internal rotation" (Tr. at 500).

As reflected in the administrative decision, Plaintiff has scant treatment records for the time period prior to December 2016. (Tr. at 19-20.) On October 7, 2015, roughly a week

8

before Plaintiff's alleged onset date, he sought treatment for right lower extremity pain, which he described as "off and on" for the last year. (Tr. at 19, 430.) He was diagnosed with Right inguinal pain with a History of right inguinal hernial repair. (Tr. at 431.) Plaintiff was noted to limp favoring his left, rather than right, leg, and an examination of his right leg showed a reduced range of motion. (Tr. at 19, 430.) Plaintiff's physician referred him to neurology for follow-up. (Tr. at 19, 433.) Although Plaintiff sought medical care for other issues later in December 2015, that assessment "did not document any musculoskeletal or neurological abnormalities." (Tr. at 19, 441-44.) The record does not reflect any other treatment records until December 2016 and January 2017, which are the records noted above, resulting in his surgery just two months later in February 2017. (Tr. at 20.) In sum, Plaintiff's contemporaneous reports to his medical providers indicated that, although his hip and leg pain existed at some level in the 3-8 years leading up to his February 2017 surgery, he reported these issues became markedly worse in late 2016, when he finally sought the help of an orthopedist, leading to surgery "[j]ust over two months later" (Tr. at 20).[6]

---

[6] Plaintiff contends that the ALJ assessed Plaintiff's RFC "without considering medical evidence from the period prior to a February 2017 right hip replacement surgery." (Pl. Br. at 3.) However, the ALJ included a narrative discussion of all of the medical evidence, as noted above. (Tr. at 19-21.) To the extent Plaintiff contends that the evidence was not properly considered because it was set out at step two of the analysis, the Court finds no error in the ALJ's failure to re-state that evidence later in the decision. See McNeil v. Saul, No. 1:19CV213, 2020 WL 5111246, at *5 (M.D.N.C. Aug. 31, 2020) ("Although the majority of that [narrative discussion of the evidence] appears in sections of the ALJ's decision preceding the RFC determination, that approach nevertheless suffices to satisfy SSR 96-8p's requirement of a narrative discussion supporting the RFC."), adopted 2020 WL 5821076 (M.D.N.C. Sept. 30, 2020); McCartney v. Apfel, No. 01–1439, 2002 WL 191573, at *1 (4th Cir. Feb. 7, 2002) (unpublished) (noting "that the ALJ need only review medical evidence once in his [or her] decision"); Kiernan v. Astrue, No. 3:12CV459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that "[w]here the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in [a later] analysis"). Regardless of where in the decision the medical evidence is discussed, the question before the Court is whether the ALJ's analysis, taken as a whole, is sufficient to provide a logical explanation for the ALJ's conclusions and allow the Court to trace the ALJ's reasoning.

Although there are no other treatment records for the period of time between October 2015 and December 2016, Plaintiff attended a physical consultative examination on March 30, 2016 with Dr. Renaldo Jarrell, who noted as follows with regard to Plaintiff's history:

> [Plaintiff] has difficulty ambulating due to pain and weakness in his right leg. He says he has not been evaluated for this but we see otherwise based on the medical records in that we do see that he has had evaluation for this done. He has been told that he either needs to see a neurologist or surgeon but he has not done that. To my understanding, he would have been able to do that through the health department. They would have generated a referral for him. So I am not quite sure what happened with that. He says that he last worked in 2012 as an auto body painter at Kernersville Dodge but was let go from that job due to the fact [that] he had problems with his leg. I cannot get a specific date that this problem actually began to occur[] or when it got worse. [Plaintiff] is very vague when it comes to answering these questions and he very well may not know exactly when the problems began as he says they started very small and became fairly large over the last 7-8 years. He has not sought work since 2012. At this time he does drive and he is responsible for his activities of daily living.

(Tr. at 455-56.)[7] Plaintiff reported at his consultative examination that "despite right leg pain he was one-hundred percent responsible for his activities of daily living," including driving, meal preparation, and household chores. (Tr. at 19, 456.) Dr. Jarrell opined, based entirely on Plaintiff's complaints of leg pain of uncertain etiology, that Plaintiff could perform a range of sedentary work. (Tr. at 458-49.) In assigning only partial weight to this opinion, the ALJ explained that Dr. Jarrell did "not resolve the inconsistencies in the objective physical findings," despite having pointed out a number of problematic inconsistencies with Plaintiff's exam, including Plaintiff's ability to tandem walk, hop, squat, and toe/heel walk despite his

---

[7] Plaintiff previously filed an application in 2016, which was denied initially in April 2016. (Tr. at 69-93, 148-52.) Plaintiff filed the present application in 2017. The medical records from the earlier proceeding, including the consultative examination from March 2016 (Tr. at 455-59), were considered by the ALJ in the present case.

antalgic gait and his retention of full strength in both lower extremities. (Tr. at 23, 457.) For example, Dr. Jarrell noted that Plaintiff:

> Was able to walk to the exam room without difficulty. He does limp on the right side. [Plaintiff] was able to sit comfortably as well as get on and off the exam table. . . .
> . . . .
> [Plaintiff] did have an antalgic gait with limping on the right, however, this was very inconsistent as the claimant was able to perform tandem walking. He was unable to get up on his toes. He is able to do hopping and squatting. He could also do toe/heel walking, though he walks with a limp. No consistency in this part of the exam at all.
> . . . .
> Bilateral upper and lower extremities 5+/5 with no deficits noted. Definitively in the right lower extremity there is 5+/5 muscle strength.

(Tr. at 456, 457, 458.) As noted by the ALJ, Dr. Jarrell did not resolve these inconsistencies, and the ALJ assigned only partial weight to this opinion in setting the RFC. (Tr. at 23.)

In setting the RFC, the ALJ also assigned partial weight to the findings of the State agency medical consultants, Dr. Dorothy Linster and Dr. Christopher Reinke, who found that Plaintiff could perform a limited range of medium work. (Tr. at 23, 102-05, 141-43.) Specifically, Dr. Linster issued an opinion in May 2017, specifically assessing Plaintiff's limitations for the period of time from October 15, 2015 through February 27, 2017, finding Plaintiff capable of medium work with additional postural limitations during that time period prior to his surgery (Tr. at 102-03.) Dr. Linster separately assessed the time period after Plaintiff's surgery, also finding Plaintiff capable of medium work at that time (Tr. at 104.) Notably, on Reconsideration in July 2017, Dr. Reinke assessed <u>only</u> the period from October 15, 2015 through February 27, 2017, prior to Plaintiff's hip replacement surgery, and opined that Plaintiff was capable of medium work with additional postural limitations during that time period. (Tr. at 141-43.) Dr. Reinke did not opine on the period after Plaintiff's surgery. (Tr.

at 139.) Thus, in assigning partial weight to these opinions, the ALJ necessarily considered the specific period of time prior to Plaintiff's surgery, and the ALJ adopted even greater postural limitations than those opined by Dr. Linster and Dr. Reinke, with additional limitations including a reduction from medium work to light work. In finding Plaintiff more restricted than the consultants opined, the ALJ specifically noted that the consultants did not have the benefit of the complete record—particularly treatment notes relating to Plaintiff's 2018 cancer diagnosis—nor did the consultants "appear to fully consider [Plaintiff's] pain." (Tr. at 23.) To account for Plaintiff's pain complaints, the ALJ found that Plaintiff was capable of light work with significantly reduced standing and walking requirements, specifically walking and standing for no more than two hours at a time and four hours cumulatively in an eight-hour workday. (Tr. at 22.)

In addition to considering the State agency physicians' opinions, the ALJ also recounted that, following the surgery by Plaintiff's "own subjective statements he retained the ability to lift up to fifty pounds and perform up to four hours of standing and walking engaging in tasks such as cutting the lawn and vehicle repairs before he experienced elevated pain levels." (Tr. at 22, 20.) The ALJ nevertheless found that Plaintiff was capable of light, rather than medium, work, and could perform only occasional postural activities, except that he could never climb ladders. (Tr. at 22.) Thus, the ALJ included greater lifting restrictions than the 50 pounds identified by Plaintiff as within his abilities after the hip replacement surgery.

Overall, the record in this case establishes that Plaintiff experienced symptoms and limitations to some extent throughout his alleged disability period. However, "as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, 'to reconcile inconsistencies in

Case 1:20-cv-00869-WO-JEP   Document 18   Filed 01/31/22   Page 12 of 14

the medical evidence.'" Atwood v. Astrue, No. 5:11CV002-RLV-DSC, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011) (quoting Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir.1976)). As the Atwood court determined under similar circumstances, "the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his impairments, but was not disabled. Simply put, '[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ).'" 2011 WL 7938408, at *6 (quoting Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir.1994) (citations omitted)).

Here, the ALJ considered and discussed relevant medical evidence regarding Plaintiff's hip impairment both before and after his February 2017 surgery. (Tr. at 19-21). The ALJ then relied on the opinions of the State agency physicians, including Dr. Reinke who opined only on Plaintiff's limitations during the period of time prior to the February 2017 surgery. The ALJ included even greater limitations than those opined by Dr. Reinke after taking into account Plaintiff's reports of pain. (Tr. at 22, 141-42) (reflecting Dr. Reicke's opinion that Plaintiff could perform lifting requirement of medium work and could frequently stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, and scaffolds between October 15, 2015 and February 27, 2017). The ALJ also considered Plaintiff's own subjective statements that he "retained the ability to lift up to fifty pounds and perform up to four hours of standing and walking" after the surgery (Tr. at 22), and the ALJ included even greater limitations covering the entirety of the period beginning October 15, 2015. Thus, contrary to Plaintiff's assertion, the ALJ's analysis in setting the RFC does not pertain solely to the period after the February 2017 surgery. In the circumstances, the ALJ's decision is sufficient to allow the

13

Court to follow her reasoning, and substantial evidence supports the ALJ's treatment of the medical records, Plaintiff's RFC, and her ultimate determination that Plaintiff was not disabled between his alleged onset date and October 1, 2018.[8]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 31st day of January, 2022.

                                                    /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge

---

[8] In his Reply Brief [Doc. #17], Plaintiff also criticizes the ALJ's identification of his impairment as "right hip replacement" (Tr. at 19) since the hip replacement did not happen until February 2017. However, in setting the RFC, the ALJ noted Plaintiff's diagnosis of "moderate osteoarthritis of the right hip" (Tr. at 22), and the ALJ's decision does not reflect any misunderstanding or confusion regarding Plaintiff's impairments and the relevant timeline.